NUMBER 13-00-00720-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI


___________________________________________________________________

CHARLES RUSSELL, Appellant,

v.

THE STATE OF TEXAS, Appellee.

___________________________________________________________________

On appeal from the 25th District Court of Gonzales County, Texas.

_________________________________________________________________

O P I N I O N

Before Chief Justice Valdez and Justices Yañez and Castillo

Opinion by Justice Castillo

Appellant Charles Russell challenges the trial court's judgment convicting him of one count each of murder
and aggravated assault. Russell pled not guilty, but was convicted by a jury of both charges. Russell was
sentenced to ninety-nine years confinement for the murder conviction and sixty-five years confinement for
the aggravated assault conviction, both sentences enhanced by a prior felony conviction and to run
concurrently. Russell's court-appointed counsel has filed a brief in which he concludes that the appeal is
frivolous. Anders v. California, 386 U.S. 738, 744-745 (1967). In his brief, counsel has pointed this
Court to three arguable points of error. First, he argues that the trial court erred in overruling his Batson
challenge to jury selection. Second, he asserts that the State's evidence presented at trial was
insufficient to support Russell's conviction. Third, Russell alleges ineffective assistance of his trial
counsel.

Factual Summary

In the early morning hours of February 5, 2000, David Porter and Pamela Byars were attacked in Porter's
home by an assailant wielding an unidentified blunt object. Byars was killed, and Porter was seriously
injured. Outside Porter's home after the attack, Russell flagged down a passing police officer to report a
gas leak on the premises. In the presence of that police officer, Porter, who was bleeding in his front
yard, looked directly at Russell and said, "You done killed her." Porter told the officer that Byars was
lying in a pool of blood inside his home. Russell was arrested immediately and was indicted by a grand
jury for murder on March 17, 2000.

There was no direct evidence that Russell committed the crimes, but several pieces of circumstantial
evidence pointed to his guilt. During trial, the jury heard testimony that Russell had come to Porter's
home twice on the evening of the crime to have sex with Byars, but was refused. During Porter's
testimony, he could not identify Russell as the assailant, but testified that his hobby was making walking
canes, and he had given Russell a cane the day before the crime. Russell's cane was later found
abandoned near some railroad tracks, but rainy weather precluded the collection of any blood or other
biological evidence from the cane. Russell's clothes were collected and subjected to blood spatter and
DNA analyses. Russell's statement to police indicated that he had taken his jacket off and put it over the
decedent's face when he found the bodies. A DNA analyst testified that blood from Byars and Porter was
found on Russell's shirt and blue jeans. A blood spatter expert testified that Russell's clothing was
marked with medium-velocity blood transfer patterns that matched those on Byars' face. He believed that
Mr. Russell's blue jeans and sweatshirt were in close proximity to the source of the blows.

Analysis

Counsel's first arguable point of error challenges the trial court's overruling of his Batson challenge to the
State's use of peremptory challenges during jury impaneling. Russell, the appellant, and Porter, the victim
of the aggravated assault, are African Americans. Byars, the decedent, was of Anglo descent. The jury
panel consisted of six African Americans amongst the forty or fifty members of the venire. The State
used its peremptory challenges to strike five of the six African Americans from the panel. After the jury
was impaneled, Russell's trial attorney raised a Batson challenge to the State's strikes. 

The use of peremptory challenges to exclude persons from the petit jury because of their race violates the
Equal Protection Clause of the Fourteenth Amendment. 
 Batson v. Kentucky
, 476 U.S. 79, 84-86 (1986).
Either party in a criminal trial may object to the other party's use of a peremptory challenge as an Equal
Protection violation. Georgia v. McCollum, 505 U.S. 42, 55-56 (1992). The objecting party must first
make a prima facie showing that the other party has used a peremptory challenge to remove a
venireperson on account of race. Purkett v. Elem, 514 U.S. 765, 770 (1995). Once the objecting party
has made a prima facie showing of purposeful discrimination, the burden of production shifts to the other
party to come forward with a race-neutral explanation. Id. An explanation is deemed race-neutral so long
as no discriminatory intent is inherent in the explanation given, even if the explanation is fantastic or
implausible. Williams v. State, 937 S.W.2d 479, 485 (Tex. Crim. App. 1996) (citing Purkett, 514 U.S. at
770). If a race-neutral explanation is tendered, the opponent of the strike must show that the race-neutral
reason is a pretext for discrimination. Williams, 937 S.W.2d at 485. The trial court must then decide
whether the objecting party has proven purposeful discrimination. Id. Since the trial court's decision will
turn largely on an evaluation of credibility, the appellate court must give that decision great deference and
must not disturb it unless it is clearly erroneous. Ladd v. State, 3 S.W.3d 547, 563 (Tex. Crim. App.
1999); Robinson v. State, 851 S.W.2d 216, 226 (Tex. Crim. App.1991).

To determine whether the fact finder's decision is "clearly erroneous," appellate courts look to the record
to see if they are left with the definite and firm conviction that a mistake has been committed. Hill v.
State, 827 S.W.2d 860, 865 (Tex. Crim. App. 1992). In doing so, the evidence must be considered in
the light most favorable to the trial court's rulings. Id. To prevail, appellant must establish that the
reasons offered by the State for the peremptory challenge were merely pretextual and a cover for a
racially motivated challenge. Id. at 870.

In reviewing the record, we note that one of the jurors selected to hear the case was Mr. Mathis, one of
the six African-Americans on the jury panel. The Batson challenge, therefore, went to only five of the six
African-Americans on the panel. At the conclusion of the State's explanation, Russell's trial counsel
accepted the race-neutral explanations for four of the five strikes. Russell's only remaining challenge was
to Ms. Erskin. Ms. Erskin testified in voir dire that she knew Russell as a child growing up and still knows
the family. She also said that she had known one of the defense witnesses for thirty years. She stated
that she could be fair and impartial. The State explained that they struck Ms. Erskin from the panel
because of her relationship to Russell and his family and because of her defensive attitude and posture
toward the District Attorney during voir dire. Russell provided no evidence demonstrating that this
explanation was pretextual. The trial court overruled Russell's Batson challenge, holding that the State
had carried its burden in establishing that it struck Ms. Erskin for a racially-neutral reason. The trial
court's determination represents a finding of fact to which we must accord great deference. Chambers v.
State, 866 S.W.2d 9, 23 (Tex. Crim. App. 1993). We find no clear error in the trial court's decision to
overrule the Batson challenge and, accordingly, defer to the trial court's judgment concerning the
credibility of the State's race-neutral justification for striking Ms. Erskin. Point of error number one is
overruled. 

Counsel's second arguable point of error challenges the sufficiency of the evidence presented at trial. 
When we review the legal sufficiency of the evidence, we view all of the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979);
Patrick v. State, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); Villarreal v. State, 865 S.W.2d 501, 503
(Tex. App.-Corpus Christi 1993, pet ref'd). The appellate court serves to ensure the rationality of the
fact finder, but does not disregard, realign, or weigh the evidence. Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988). In circumstantial evidence cases, such as this one, it is not necessary that
every fact point directly and independently to the appellant's guilt. If the fact finder's conclusion is
warranted by the combined and cumulative force of all the incriminating circumstances, then the evidence
is sufficient. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). When we review the
factual sufficiency of the evidence, we review the evidence in support of and contrary to the verdict to
determine whether the evidence is so weak that it renders the verdict clearly wrong and manifestly unjust
or the verdict is contrary to the great weight and preponderance of the evidence. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). 

We must determine whether the State presented sufficient evidence to establish the required elements of
murder and aggravated assault. According to Texas Penal Code section 19.02(b)(1), "a person commits
an offense [of murder] if he intentionally or knowingly causes the death of an individual." Tex. Pen. Code
Ann. §19.02(b)(1) (Vernon 1994). Section 6.03(b) defines knowingly (with respect to a result of
conduct) to mean "when he is aware that his conduct is reasonably certain to cause the result." Tex. Pen.
Code Ann. §6.03(b) (Vernon 1994). In order to convict Russell of aggravated assault against Porter, the
State would have to prove that Russell intentionally, knowingly, or recklessly caused serious bodily injury
to another. Tex. Pen. Code Ann. §§22.01(a)(1) (Vernon Supp. 2001), 22.02(a)(1) (Vernon 1994). The
Texas Penal Code defines serious bodily injury to mean "bodily injury that creates a substantial risk of
death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ." Tex. Pen. Code Ann. §1.07(a)(46) (Vernon 1994). There was
no direct evidence, but a substantial amount of circumstantial evidence was presented suggesting that
Russell committed the crimes against Porter and Byars. While unable to definitively identify the assaultive
weapon, the State presented strong circumstantial evidence that Russell entered Porter's home with a
walking cane (given to him the previous day by Porter) or other blunt object and savagely beat Porter and
Byars. Porter testified that Russell was upset because Byars would not have sex with him. The multiple
strikes to the head in the manner suggested was sufficient to establish that the assailant knowingly
caused the death of Byars and recklessly caused serious bodily injury to Porter. DNA analysis of Russell's
clothing revealed blood from both victims, and blood spatter analysis suggested Russell's sweatshirt and
blue jeans were in close proximity to Byars at the time of the blows. Eyewitnesses testified that Russell
was in or near Porter's house for most of the evening of the crime. Accordingly, we find that the State
presented sufficient evidence to establish the elements of murder and aggravated assault. We further find
that this evidence was not so weak that it rendered the verdict clearly wrong, nor was the verdict
contrary to the great weight and preponderance of the evidence. Point of error number two is overruled. 

Counsel's third arguable point of error is that Russell's trial counsel provided ineffective assistance. This
Court uses the two-pronged test put forth in Strickland v. Washington, 466 U.S. 668, 691 (1984) and
adopted by the Texas Court of Criminal Appeals in Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim
App. 1986). Sebalt v. State, 28 S.W.3d 819, 822 (Tex. App.-Corpus Christi 2000, no pet.). The
Strickland test requires the appellant to demonstrate that: 1) the trial counsel's representation was
deficient, and 2) the deficient performance deprived the appellant of a fair trial. Strickland at 687-696. 
The burden is on the appellant to overcome the presumption that the trial counsel's actions fell within a
wide range of reasonable professional conduct. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994). A claim of ineffective assistance of counsel can be sustained only if it is firmly grounded in the
record. Duhart v. State, 890 S.W.2d 187, 190 (Tex. App.-Corpus Christi 1994, no pet.); Powers v.
State, 727 S.W.2d 313, 316 (Tex. App.-Houston [1st Dist.] 1987, pet. ref'd). 

After a review of the record, we do not see support for Russell's claim of ineffective assistance of
counsel. Although Russell's trial counsel only submitted one exhibit into evidence and called only two
witnesses on his behalf, this does not render trial counsel's assistance deficient. Counsel vigorously
cross-examined and challenged the testimony of the DNA and blood spatter experts. Counsel had to try
to overcome testimony that Russell was the only other individual in or around Porter's home at the time of
the attack, and that Russell had blood stains from the victims on his sweatshirt and back of his jeans. 
The overwhelming evidence of Russell's guilt indicates that any alleged deficient assistance by trial
counsel did not result in Russell being deprived of a fair trial, and we see no evidence that the outcome of
the trial would have been different but for the acts of counsel. Point of error number three is overruled.

Disposition

After reviewing the record as mandated by Penson v. Ohio, 488 U.S. 75, 82-83 (1988), we find that
appellant's counsel has correctly concluded that the appeal is frivolous. Accordingly, we affirm the
judgment of the trial court and grant the motion of appellant's counsel to withdraw as attorney of record. 
Furthermore, we order appellant's attorney to notify appellant of the disposition of this appeal and of the
availability of discretionary review. See Ex parte Wilson, 956 S.W.2d 25, 27 (Tex. Crim. App. 1997). 


ERRLINDA CASTILLO

Justice


Do not publish. Tex. R. App. P. 47.3.

Opinion delivered and filed

this 16th day of August, 2001.