Opinion issued April 23, 2009












 





In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00280-CR






GARY LUIS JUAREZ, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 248th District Court

Harris County, Texas

Trial Court Cause No. 1107288






MEMORANDUM OPINION

 Appellant, Gary Luis Juarez, appeals a judgment that convicts him of
aggravated sexual assault of a child. Tex. Penal Code Ann. § 22.021 (Vernon Supp.
2008). Appellant pleaded not guilty to the offense. The jury found him guilty and
determined his sentence at 50 years in prison. Appellant presents four issues
challenging the effectiveness of his trial counsel. Because appellant has failed to
show his attorney rendered ineffective assistance at trial, we affirm. 

Background

 Appellant lived in the same apartment complex as the 12-year-old complainant
and her family, whom he befriended. Complainant frequented appellant's apartment
to clean it for extra money. While cleaning appellant's apartment one day, appellant
"grabbed" complainant, threw her onto his bed, pulled off her clothing, and caused
his sexual organ to penetrate her sexual organ. Appellant stopped when he heard
complainant's mother coming. He told complainant that he would kill her and her
family if she told anyone what he had done, instructing her to get dressed and finish
cleaning.

 Complainant did not tell anyone about the offense until a few weeks later,
when she told George Cervantes, an assistant principal at the school she attended. 
Cervantes spoke briefly to complainant, but quickly referred her to the school
principal, Diana Walker, because he felt he lacked experience to handle the situation
and believed Walker would be better at discussing the matter with complainant. 
Complainant then related the details of the assault to Walker. Following
complainant's revelation, a sexual assault examination was performed on her. The
examination did not rule out or confirm sexual abuse.

 At trial, during voir dire, appellant's trial attorney told the panel appellant was
presumed innocent and asked whether anyone would hold it against appellant if he
did not testify. Appellant's trial attorney also asked whether the panel members were
biased based on the nature of the charges. Although appellant's attorney did not
make any challenges for cause, he agreed with the trial court's pronouncement that
28 of the panel members should be excused for cause. Among the prospective jurors
who were excluded for cause were people who could not consider probation and
would hold it against appellant if he did not testify. 

 After the State rested, appellant's trial attorney moved for an instructed verdict,
which the trial court denied. Appellant then rested without presenting any evidence. 
Appellant's trial attorney made a closing argument in the guilt-innocence phase of
trial. He told the jury that there was no physical evidence, that appellant's former
roommate was a disgruntled former employee who was fabricating the story against
appellant, and that complainant's story was inconsistent. 

 In the punishment phase of trial, the State's evidence consisted of two teenaged
girls who testified appellant engaged in inappropriate conduct with them. One of the
girls, age 14, said appellant asked her to watch him masturbate. The other girl, age
16, said appellant showed her nude photos of himself. After the State rested, the
appellant testified, denying the conduct with the two girls. During cross-examination,
the State asked appellant whether he moved from his apartment on December 15,
2007, breaking his lease without giving the apartment complex notice of his intent to
leave. Appellant explained he left due to an eviction notice. Appellant 
acknowledged during cross-examination that he wrote three checks that were returned
unpaid by the bank, stating he had intended to pay the checks with money he was
supposed to have been paid for work he had completed. 

 After the State and defense rested in the punishment phase of trial, the State's
attorney approached the bench to say that appellant appeared to be eligible for
probation, but the defense had not proven his eligibility. Appellant's attorney was
allowed to re-open his presentation of the evidence. Appellant testified that he had
never before been convicted of a felony. The State then introduced appellant's
misdemeanor convictions, one for driving with a suspended license and the other for
carrying a weapon. Appellant did not object to the evidence nor did he request a
limiting instruction as to the extraneous offenses when they were admitted.

 The court's instructions to the jury allowed the jury to give community
supervision if it determined that was appropriate. The instructions also allowed the
jury to consider extraneous offenses and bad acts that appellant was not charged with
or finally convicted of if the evidence was proved by the State beyond a reasonable
doubt or the evidence showed appellant could be held criminally responsible for the
conduct. Appellant's trial counsel gave a short four-sentence closing argument at the
punishment phase. He said, "Ladies and Gentlemen, I think we have all heard what
needs to be heard. Mr. Juarez has, to me, throughout the proceeding, denied all
involvement in this. He has attempted to make employment and has not been
convicted of any prior felonies. Thank you very much." The jury determined his
sentence at 50 years in prison.

Ineffective Assistance of Counsel

 Appellant's first three issues challenge his attorney's effectiveness during trial.

 A. Applicable Law

 To prevail on a claim of ineffective assistance of counsel, the defendant must
show that trial counsel's performance was deficient and a reasonable probability
exists that the result of the proceeding would have been different. Strickland v.
Washington, 466 U.S. 668, 687, 693, 104 S. Ct. 2052, 2064, 2068 (1984). The first
prong of the Strickland test requires that the defendant show that counsel's
performance fell below an objective standard of reasonableness. Thompson v. State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Thus, the defendant must prove
objectively, by a preponderance of the evidence, that trial counsel's representation
fell below professional standards. Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim.
App. 2002). The second prong requires that the defendant show a reasonable
probability that but for counsel's unprofessional errors, the result of the proceeding
would have been different. See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068;
Thompson, 9 S.W.3d at 812. Because the reviewing court must, however, indulge a
strong presumption that counsel's conduct falls within the range of reasonable
professional assistance, the defendant must overcome the presumption that, under the
circumstances, the challenged action "'might be considered sound trial strategy.'" 
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065 (quoting Michel v. Louisiana, 300 U.S.
91, 101, 76 S. Ct. 158, 165 (1955)). 

 Any allegation of ineffectiveness must be firmly founded in the record, which
must demonstrate affirmatively the alleged ineffectiveness. Thompson, 9 S.W.3d at
813 (citing McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). We
will not speculate to find trial counsel ineffective when the record is silent on
counsel's reasoning or strategy. See Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex.
Crim. App. 2000). Here, appellant did not obtain a motion for new trial hearing and
no direct evidence in the record establishes why appellant's attorney did not object
at trial to the testimony complained of on appeal. We therefore presume that counsel
had a plausible reason for his actions. Thompson, 9 S.W.3d at 814.

 In rare cases, however, the record can be sufficient to prove that counsel's
performance was deficient, despite the absence of affirmative evidence of counsel's
reasoning or strategy. Id. We therefore examine the record to determine whether this
is one of those rare cases.

 B. Analysis of Voir Dire

 Appellant contends he received ineffective assistance when trial counsel
allowed onto the jury a juror who announced herself as "suspicious." At voir dire,
trial counsel questioned prospective jurors on whether they had a preconceived
presumption of guilt that would make them unable to fairly evaluate the facts. During
the discussion, one juror said, "I am very suspicious." Trial counsel did not question
her further or challenge her for cause, and that juror was allowed onto the jury. 

 At the conclusion of voir dire, the trial court named the venire members that
it thought were disqualified based on their statements to the attorneys. The trial court
allowed counsel for the State and appellant's counsel to indicate whether they agreed
with the court's assessment. Twenty-eight venire members were struck by agreement. 
 Failure to strike a venire member who announces herself as suspicious does not
necessarily amount to ineffective assistance of counsel. See Jackson v. State, 877
S.W.2d 768, 770-71 ( Tex. Crim. App. 1994) (trial counsel was not ineffective when
he failed to strike jurors who expressed bias that weighed against appellant); Delrio
v. State, 840 S.W.2d 443, 445-47 (Tex. Crim App. 1992) (trial counsel's assistance
was not ineffective in failing to strike or challenge ex-narcotics officer who knew
defendant and stated he could not be impartial). Without a record of why trial
counsel acted as he did, we must presume he had a sound trial strategy. See Batiste
v. State, 217 S.W.3d 74, 83 (Tex. App.--Houston [1st Dist.] 2006, no pet.). We
cannot conclude that this allegation of ineffectiveness is firmly founded in the record. 
See Thompson, 9 S.W.3d at 813. 

 C. Analysis of Guilt-Innocence Phase of Trial

 Appellant challenges trial counsel's failure to object to evidence, namely (1)
the outcry testimony by Walker, (2) appellant's familiarity with other young girls, (3)
opinions about complainant's truthfulness and complainant's statements introduced
through the investigating officer, (4) appellant's failure to pay rent, and (5)
appellant's use of cocaine. Appellant asserts that all this evidence was inadmissible
because it was hearsay and inadmissible extraneous offenses. Appellant also suggests
his trial attorney should have requested limiting instructions as to some of this
evidence. 

 An attorney is not ineffective for failing to object to admissible evidence. See
Heiman v. State, 923 S.W.2d 622, 625 (Tex. App.--Houston [1st Dist.] 1995, pet.
ref'd). Moreover, even when evidence is inadmissible, the decision not to object can
be a plausible trial strategy, for example, as part of an attempt to create the
appearance of being open and completely honest with regard to all questions. Id. at
626.

 1. The Outcry Testimony by Walker 

 Appellant asserts Walker should not have been allowed to testify to
complainant's outcry statements because she was the second person to whom
complainant spoke.

 Article 38.072 provides that the first person to whom a child makes a statement
about the sexual assault may testify. Tex. Code Crim. Proc. Ann. art. 38.072
(Vernon 2005). To be designated as the "outcry witness" and be allowed to testify,
"one element that must be clearly shown by the evidence is that the victim described
the offense to that witness." Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim. App.
1990). The statement must be more than "a general allegation from the child that
something in the area of child abuse was going on at home." Id. Where the record
is void as to any specific details of the statements made to the witness and as to any
description of the alleged offense made to the witness, then the statements do not
amount to more than a general allegation that something in the area of child abuse
occurred. See id.

 The State filed a notice of intention to use complainant's outcry statements. 
The notice included the State's intention to offer statements made by complainant to
Cervantes, Walker, and Susan Odhiambo, the forensic interviewer who interviewed
complainant. At trial, only Cervantes and Walker testified.

 Complainant first revealed the offense to Cervantes, telling him generally that
she had been "raped." Although she was the second witness chronologically to whom
complainant spoke, Walker was the first person to whom complainant revealed the
details about the offense. Appellant's trial attorney was not ineffective by failing to
object to Walker's testimony because her evidence was admissible as outcry
testimony. See Heiman, 923 S.W.2d at 625. We cannot conclude this is one of those
rare instances where no attorney would have failed to object to Walker's testimony
as the outcry witness.

 2. Appellant's Familiarity with Other Young Girls 

 Appellant contends his trial attorney should have objected to evidence by
Walker, who said complainant said "something about her sister and the defendant";
by complainant, who said a 16-year-old girl at the apartment complex disclosed
"something as well" relating to appellant after complainant told the girl what
happened to complainant; and by appellant's former roommate, who testified
appellant had females between the ages of 15 and 25 come to their apartment, go into
appellant's bedroom, and appellant would then ask the roommate to leave.

 Appellant's roommate described appellant's sexually explicit statements and
sexual behavior toward complainant. Perhaps, in an attempt to show the roommate
was out to get appellant, appellant's trial counsel allowed the roommate to make other
negative statements about appellant. We do not know the motives of appellant's trial
attorney because appellant failed to obtain a motion for new trial hearing. We cannot
conclude that this is one of the rare occasions where no attorney would have
employed this strategy to discredit the roommate. Furthermore, the record fails to
show why the attorney did not object to statements by Walker and complainant, and
we cannot conclude that the nature of the statements are such that no reasonable
attorney would have failed to object to the statements. Moreover, the record does not
show why the attorney did not request a limiting instruction. Based on the record
before us, we cannot find the attorney ineffective. See Batiste, 217 S.W.3d at 83.

 3. Opinion About Complainant's Truthfulness and Admission of
Statements Made by Complainant


 Appellant contends his trial counsel should have objected to Walker's
testimony that she did not believe complainant "was making this stuff up," based on
what complainant said to Walker and that Walker had "no concerns about"
complainant's truthfulness. Appellant contends Walker's opinion testimony usurped
the jury's function and bolstered complainant's testimony. Appellant contends trial
counsel was ineffective due to his failure to object to the investigating officer's
statement that complainant's friend told the investigating officer that complainant
told the friend appellant raped complainant. The record does not show why
appellant's trial attorney did not object. Perhaps he desired to show that no one had
critically questioned whether complainant was telling the truth or that complainant
was well rehearsed. Without evidence of the strategy appellant's trial attorney
employed, we cannot find him ineffective based on the record before us. See id.

 4. Appellant's Failure to Pay Rent 

 Appellant further asserts trial counsel was ineffective by failing to object to
evidence that (1) appellant owed rent, (2) appellant moved out of his apartment
without giving notice to the management, and (3) statements written by the
management at appellant's apartment complex on his lease records. The State argued
appellant left the complex quickly without paying rent because he was guilty of the
assault on complainant. Appellant, however, explained that he left the complex for
financial reasons, and not because of guilt for his conduct with complainant. We
cannot find appellant's attorney ineffective based on the record before us.

 5. Appellant's Use of Cocaine 

 Appellant contends his trial counsel rendered ineffective assistance by failing
to object to references to appellant's use of cocaine. Specifically, appellant asserts
his trial counsel was ineffective for failing to object to his former roommate's
testimony that appellant "liked to party with cocaine" and complainant's mother's
testimony that she used cocaine with appellant twice. Without evidence of the
strategy and methods involved concerning counsel's actions at trial, we will presume
sound trial strategy. See id. For example, it is a legitimate trial strategy to admit past
wrongs to give the appearance of being completely open and honest with the jury. 
See id.

 D. Analysis of Punishment Phase of Trial

 Appellant contends trial counsel was ineffective by failing to object at the
punishment phase of trial to extraneous offenses and bad acts. Specifically, appellant
contends the State introduced, without objection from his trial counsel, extraneous
offense evidence "of three convictions that happened more than ten years before trial,
all misdemeanors." Appellant contends extraneous offenses "are inherently
prejudicial" and his trial counsel rendered ineffective assistance for failing to object
or request a limiting instruction. 

 The record of the punishment phase shows the State introduced evidence of
two misdemeanor convictions--one for driving with a suspended license and one for
"carrying a weapon." Prior to trial, the State filed a notice of intention to use
extraneous offenses and prior convictions. The Code of Criminal Procedure allows
admission of extraneous offenses and bad acts that are shown beyond a reasonable
doubt to have been committed by the defendant without limitation regarding when
committed. See Tex. Crim. Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2008). 
Appellant's counsel was not ineffective by failing to object to admissible evidence. 
Heiman, 923 S.W.2d at 625. 

 Appellant also contends evidence of the extraneous offenses would have been
excluded if his trial counsel had objected because they were more than 10 years old. 
Appellant cites to Texas Rule of Evidence 609 to support this contention. However,
rule 609 deals with extraneous offenses used for impeachment purposes. See Tex.
R. Evid. 609. As noted above, article 37.07 provides these are admissible during
punishment. The provisions of rule 609 do not apply to extraneous offenses offered
during punishment for a purpose other than impeachment. See Barnett v. State, 847
S.W.2d 678 679-80 (Tex. App.--Texarkana 1993, no pet.). 

 We conclude that appellant does not meet the first prong of Strickland because
he has failed to show that his counsel's performance fell below an objective standard
of reasonableness. See Mitchell, 68 S.W.3d at 642; Thompson, 9 S.W.3d at 812. We
overrule appellant's first three issues.

Complete Denial of Counsel

 In his fourth issue, appellant asserts trial counsel's performance was so
inadequate that he was completely deprived of counsel.

 To prevail on the contention that he received virtually no assistance of
counsel, appellant must show that trial counsel entirely failed "to subject the
prosecution's case to meaningful adversarial testing." United States v. Cronic, 466
U.S. 648, 659, 104 S. Ct. 2039, 2047 (1984); Ex parte McFarland, 163 S.W.3d 743,
753 (Tex. Crim. App. 2005). "When a true adversarial criminal trial has been
conducted--even if defense counsel may have made demonstrable errors--the kind
of testing envisioned by the Sixth Amendment has occurred." Cronic, 466 U.S. at
656, 104 S. Ct. at 2045 (internal citation omitted). It is only when the process loses
its character as a confrontation between adversaries that the constitutional guarantee
has been violated. Id. at 656-57, 104 S. Ct. at 2046-46.

 Appellant contends he was deprived of counsel because his attorney did not file
an election for the jury to assess punishment. However, appellant's trial attorney did
file an election for the jury to assess punishment, albeit after he was permitted by the
court to reopen his case. Nonetheless, he did file the election for jury punishment,
and proved eligibility for community supervision, which was included as an option
in the jury charge. 

 Appellant also asserts his trial attorney did not cross-examine State witnesses
in depth. The record shows, however, that appellant's trial counsel cross-examined
all the State's witnesses except Walker. During trial counsel's cross-examinations,
he questioned the State's witnesses about the delay in the presentment of criminal
charges, complainant's reactions to the assault, complainant's credibility, the
reliability of the evidence, and the witnesses' relationship to appellant. Appellant's
trial attorney, therefore, did cross-examine the majority of the witnesses presented by
the State concerning the substance of the accusation against appellant.

 Appellant further asserts his attorney failed to make objections during trial. 
The record shows appellant's counsel made three objections during trial. During the 
guilt-innocence phase, counsel objected to the testimony of appellant's roommate
when the State asked him whether appellant had made specific comments about
complainant, and to the testimony of complainant when the State asked for certain
details of the assault. During the punishment stage, when the State asked the 14-year-old girl what appellant had said to her during one of her visits to his apartment,
counsel objected. The court overruled all three objections. Appellant's trial attorney,
therefore, did make objections during trial.

 Furthermore, appellant contends his attorney failed to act in accordance with
rules of the court. The record shows that at one point during the trial, while
appellant's trial attorney was asking questions of a witness, the trial court asked him
to sit down because he was violating the court's rules that required him to remain
seated. Although this may have been a violation of the court's rule to remain seated
while questioning witnesses, this single example of failing to follow the trial court's
local rules of decorum does not amount to a complete deprivation of trial counsel.

 Although the record does not support all of appellant's assertions concerning
his trial attorney's representation, the record does support appellant's contention that
trial counsel failed to (1) file pretrial motions, (2) request discovery from the State,
(3) make objections to the court's charge, and (4) present witnesses other than 
appellant. However, these failures are insufficient to show that trial counsel entirely
failed to subject the prosecution's case to meaningful adversarial testing, particularly
in light of affirmative actions taken to defend appellant at trial by conducting a voir
dire, cross-examining witnesses, presenting a defense through cross-examination of
the State's witnesses, and arguing for a directed verdict. 

 Appellant has failed to demonstrate that trial counsel entirely failed to subject
the prosecution's case to meaningful adversarial testing and received virtually no
assistance of counsel. See id. at 659, 104 S. Ct. at 2047; McFarland, 163 S.W.3d at
752-53; Haynes v. Cain, 298 F.3d 375, 381-82 (5th Cir. 2002). We hold that
appellant was neither actually nor constructively denied the assistance of counsel. 
We overrule appellant's fourth issue.

Conclusion

 We affirm the judgment of the trial court. 



 Elsa Alcala

 Justice


Panel consists of Chief Justice Radack and Justices Alcala and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).